**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:16-CV-00073 |
| v. | ) | |
| | ) | |
| EDWARD S. FLUME, JR., | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S MOTION FOR SUMMARY**
**JUDGMENT AGAINST EDWARD S. FLUME, JR. AND BRIEF**

**I.      INTRODUCTION AND OVERVIEW.**

This is a suit brought by the United States pursuant to 31 U.S.C. §  3711(g)(4) against

Defendant Edward S. Flume, Jr. (Flume) to reduce to judgment and collect unpaid civil penalties

assessed against him for his willful failure to timely report his interest in foreign bank accounts

as required by 31 U.S.C. § 5314 and its implementing regulations, plus accrued interest on the

assessed penalties, late payment penalties and associated fees and the additional surcharge

authorized by 28 U.S.C. § 3011.  The penalties assessed against Flume are for his willful failure

to disclose the existence of a foreign account that he had an interest in, or signature authority

over, with UBS in Switzerland.  During the same years, Flume admitted that he had a foreign

account in Mexico, but failed to disclose the account in Switzerland.  Because no genuine

disputes of material fact exist and the United States is entitled to judgment as a matter of law, its

motion for summary judgment should be granted.

**II.      STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT.**

Whether Flume is liable for the willful penalties assessed against him pursuant to 31

U.S.C. § 5314 and its implementing regulations for tax years 2007 and 2008 for his failure to

report his Swiss bank account to the IRS for those years?

III.    **SUMMARY OF THE ARGUMENT.**

Congress imposed reporting requirements on United States persons (which includes citizens, resident aliens, trusts, estates, and domestic entities) that have an interest in foreign financial accounts in excess of $10,000.  The Currency and Foreign Transactions Reporting Act, also known as "The Bank Secrecy Act (the "BSA" or the "Act"), 31 U.S.C. §§ 5311–25, regulates offshore banking and contains a number of recordkeeping and inspection provisions." *United States v. Under Seal*, 737 F.3d 330, 333 (4th Cir. 2013).  "Among the purposes of the BSA is 'to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.' 31 U.S.C. § 5311." *United States v. Simonelli*, 614 F.Supp.2d 241 (D. Conn. 2008), *quoting*, 31 U.S.C. § 5311; *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974) (noting that the BSA was enacted after extensive hearings regarding the unavailability of foreign and domestic bank records for customers believed to be violating criminal or civil laws).

To fill the information gap, the BSA requires United States citizens to keep records and file reports with the IRS.  The required report is the report of foreign bank and financial accounts report ("FBAR"), which, during the years in issue, was form TD F-90-22.1. The FBAR must be filed on or before June 30th of the year following the calendar year for which the report is made. 31 C.F.R. § 103.27(c); *United States v. Williams*, 489 Fed. Appx. 655 (4th Cir. 2012).  An individual – like Flume – who fails to comply with the FBAR reporting requirements is subject to civil penalties. 31 U.S.C. § 5321.  For willful – that is knowing and voluntary, or reckless – violations, the maximum penalty is either 50% of the bank account balance or $100,000, whichever amount is greater. 31 U.S.C. § 5321(a)(5).  There is no reasonable cause exception for willful violations of the FBAR reporting requirements. 31 U.S.C. § 5321(a)(5)(C)(ii).

During 2007 and 2008, Flume, a United States citizen, had a financial interest in, and signatory authority over, a foreign account at UBS in Switzerland that had account balances exceeding $10,000.  In 2007 and 2008, the UBS Account had an average monthly balance of $899,342.02 and $718,811.24, respectively.  Thus, Flume had a requirement to timely file an FBAR form TD- F 90-22.1 for both 2007 and 2008.  However, on June 28, 2010, Flume filed delinquent FBARs for both 2007 and 2008 disclosing his foreign accounts at Monex in Mexico and the UBS account in Switzerland.

Flume knew he had to report foreign bank accounts since he did list his Mexican bank account on his 2007 and 2008 income tax returns.  But, Flume failed to list the UBS account in Switzerland on these returns.  Flume directed, controlled and actively traded the investments in the UBS Account. Flume had a personal credit card with the UBS Account. Flume even directed disbursements from the UBS account to his personal account in Mexico.  Flume opened the account in a corporate name while stating he was beneficial owner of, and had signature authority over, the account. Yet, Flume failed to disclose the UBS Account on his 2007 and 2008 returns.  Thus, Flume's failure to timely file the FBARs disclosing the UBS account for 2007 and 2008 was willful.  Due to Flume's willful failure to timely file FBARs reporting his financial interest in the UBS account for 2007 and 2008, the IRS assessed penalties against him in the amounts of $356,509 and $100,000 for 2007 and 2008, respectively.

## IV.     STATEMENT OF UNDISPUTED MATERIAL FACTS

### Flume's financial interest and signature authority in Switzerland UBS Account

1.      Flume is a U.S. citizen during 2007 and 2008.  *Gov. Ex. 42 at pg. 2.*

2.      On October 18, 2005, Edward Flume ("Flume") opened an account at UBS AG in Switzerland in the name of Wilshire Holdings, Inc. ("UBS Account"). *Gov. Exs. 20, 22, and 41,*

*RFA Nos. 7 and 54.*  Wilshire Holdings Inc. ("Wilshire") is a Belize Corporation. *Gov. Exs. 11, 12 and 41, RFA, No. 54.*  Flume and his wife incorporated Wilshire on April 12, 2001.  *Gov Exs. 11 and 42.[1]* During 2007 and 2008, Flume was the sole director and president of Wilshire. *Gov. Ex. 4 and Gov. Ex. 41, RFA, Nos. 12, 13 and 14.*  Upon opening the UBS Account, Flume represented that he and his wife, Martha Flume, owned all of the stock of Wilshire. *Gov. Exs. 22, and 41, RFA, No. 10. Gov. Ex. 43, Flume Dep. p 3. 133 line 8 to p.134 line 16.*

3.      Flume and his wife were the only people with signature authority for the UBS account.  *Gov. Exs. 19, 20, 22 and 41, RFA Nos. 8 and 9. See also Gov. Ex. 42.*

4.      Flume was the beneficial owner of the UBS account.  *Gov. Exs. 13, 14, 42 at p. 5. Gov. Ex. 22 at pp. DOJ 001007, DOJ 001012 and 1013; (Flume verifies his signature, see Gov. Ex. 43, Flume Dep. pp. 131-132 lines 25-16; p. 133 lines 8-19 and pp. 145-146 lines 21-6.)*  Flume told UBS that he was the beneficial owner of the UBS account.  *Gov. Ex. 43, Flume Dep. p 3. 133 line 8 to p. 134 line 16.*

5.      Flume instructed UBS not to send him the UBS account statements, but to retain them at UBS.  Flume signed a waiver of right to invest in or hold United States securities for the UBS account.  *Gov. Ex. 16 at p. DOJ 000170; Gov. Ex. 43, Flume Dep. p. 83 line 8 to 16.*  The waiver specifically addressed IRS Rev. Proc. 2000-12, 2000-1 C.B. 387 (2000) 2000 WL 10960, required withholding of 30% on U.S. sourced investment income.  *Gov. Ex. 16 and Gov. 44.*

6.      The purpose for the UBS Account was for the wealth management of the Flumes' retirement funds. *Gov. Ex. 22 at pp. DOJ 001008.*  During 2007 and 2008, Flume directed and controlled the investments in the UBS account. *Gov. Ex. 31.Gov. Ex. 41, RFA, Nos. 23 and 24, and*

---

[1] Gov. 42 is the attached opinion of Edward Flume v. Commissioner of Internal Revenue Service, T.C. Memo. 2017-21.  Facts established by Government Ex. 42 are factual findings in Flume's Tax Court case which are subject to the doctrine of collateral estoppel in this case

*Gov. Ex. 42 at p. 5.*  Flume opened personal credit card accounts with UBS for him and his wife.

*Gov. Ex. 31 at p. DOJ001074 and Ex. 21 DOJ 000569 (line entry dated 27.11.06).*  Flume directed

disbursements from the UBS account to his personal bank and debit card accounts.  *Gov. Ex. 42 at*

*p. 5.*  Flume directed the transfer of funds from the UBS account to a French Bank account. *Gov.*

*Ex. 31 at p. DOJ 001101.*  Flume directed disbursements from the UBS account to his personal

Banco Monex SA account.  *Gov. Ex. 31 at p. DOJ 001109.*

      7.     During 2007 and 2008, Flume maintained a personal bank account in Mexico, at

Banco Monex SA.  *Gov. Ex. 41, RFA, Nos. 36 and 37.*  In March of 2008, Flume instructed and

directed monthly payments of $35,000 from the UBS account to his Banco Monex SA account.

*Gov. Ex. 31, at pp. DOJ 001100 and DOJ 001109.*

      8.     In June of 2008, UBS banker Bradley Birkenfeld pled guilty in the Southern

District of Florida to conspiring with an American billionaire to evade payment of federal

income taxes.  *Gov. Ex. 60.*  At least by July 3, 2008, Flume was aware of the IRS investigations

of UBS. *Gov. Ex. 10 at p. DOJ 000206 entry dated July 8, 2008 and Gov. Ex. 43, Flume Dep. p. 86 line*

*3 to p. 87 line 1.*  On July 3, 2008, Flume expressed concern about the IRS investigation of UBS,

in particular the confidentiality of his hidden UBS account, to Florian Fischer. *Gov. Ex. 10 at p.*

*DOJ 000206 entry dated July 8, 2008; Gov. Ex. 43, Flume Dep. p. 120 lines 19-23.*

        a.    Florian Fischer was Flume's account executive at UBS. *Ex. 43 Flume Dep. 29-30 lines*

           *19-8.*  Florian Fischer visited Flume's home in Mexico.  *Gov. Ex. 10 at p. DOJ*

           *000207 entry dated October 7, 2008, and Gov. Ex. 43, Flume Dep. p. 85 lines 18-24.*  In

           2008, Flume considered Florian Fischer his friend.  *Gov. Ex. 43, Flume Dep. p. 86*

           *lines 24- 25.*

      9.     Around October 7, 2008, after Flume was informed of UBS policy changes, he

confirmed that he could sign an IRS Form W-9 to disclose his U.S. taxpayer identification

number.  *Gov. Ex. 10 at p. DOJ 000206 entry dated October 7, 2008.*  Subsequently, on October 17,

2008, Flume directed that all of his assets and account holdings from the UBS account be

transferred to his Fidelity Investment account in the name of Wilshire Holdings Inc.  *Gov. Exs. 23,*

*and 41, RFA, No. 72,*   Flume had signature authority over this Fidelity Investment account. *Gov.*

*Ex. 23 at DOJ001024. Gov. Ex. 41 at RFA, No. 73.*

### UBS Account balances exceeded $10,000 in both 2007 and 2008

10.     During 2007 and 2008, Flume, a United States citizen, had a financial interest in,

and signatory authority over, a foreign account at UBS in Switzerland that had account balances

exceeding $10,000.  *Gov. Exs. 19 and 41, Defendant's Responses to Request for Admissions "RFA",*

*Nos. 1, 2, 3, 4, 5 and 6.*

11.      On April 3, 2006, $10,000 was deposited into the UBS Account to initially fund

the account. *Gov. Ex. 10 at p. DOJ 000196 and Gov. Ex. 24 at p. DOJ 000562.*  On August 24, 2006,

$500,000 was transferred to the UBS account. *Gov. Ex. 10 at p. DOJ 000190, 196 and Gov. Ex. 24 at*

*p.  DOJ 000563.*  On November 10, 2006, $200,000 was transferred to the UBS account.  *Gov. Ex.*

*10 at p. DOJ 000178 and Gov. Ex. 21 at p. DOJ 000568.*

12.     During 2007, the average monthly balance of the UBS account was $899,342.02.

*Gov. Ex. 26 p. DOJ 000400.*  The highest monthly balance in the UBS account in 2007 was

$930,090.49.  *Id.*

13.     During 2008, the average monthly balance of the UBS account was $718,811.24.

*Gov. Ex. 26 p. DOJ 000400.*  The highest monthly balance in the UBS account in 2008 was

$848,503.16.  *Id.*

### Flume willfully failed to disclose his interest in or signature authority over the UBS Account

14.     Flume knew he had a "check the box" requirement to report his interest in and/or

signature authority over a foreign bank account on his federal income tax returns.  *Gov. Ex. 1, at*

6

*p. DOJ 000768, Gov. Ex. 2 p. at DOJ 000799, and Gov. Ex. 62 at p. DOJ 000754.* In July of 2008

Flume knew that he had a "check the box" requirement in regard to the UBS Account. *Gov. Ex.*

*10 at p. DOJ 000206 entry dated July 8, 2008.*

     15.    Flume's 2007 federal income tax return was filed on September 29, 2008. *Gov.*

*Ex. 1.* Flume "checked the box" on Schedule B, Part III Line 7a of his 2007 federal income tax

return admitting that he had foreign bank accounts in 2007. *Gov. Ex. 1, at p. DOJ 000768.*

However, Flume only disclosed that he had bank accounts in Mexico. *Gov. Ex. 1* and *Gov. Ex. 41,*

*RFA, No. 51.*

     16.    On July 30, 2009, Flume filed his 2008 federal income tax return. Flume

"checked the box" on Schedule B, Part III Line 7a of his 2008 federal income tax return

admitting that he had foreign bank accounts in 2008. *Gov. Ex. 2.* However, Flume again only

disclosed that he had bank accounts in Mexico. *Gov. Ex. 2*, and *Gov. Ex. 41, RFA, No. 52.*

     17.    Flume failed to disclose, list or mention the UBS account in Switzerland on his

2007 and 2008 tax returns. *Gov. Ex. 41, RFA, Nos. 48 and 49 and Gov. Ex. 1at p. DOJ 000768 and*

*Gov. Ex. 2 at p. DOJ000799.*

     18.    In 2005, at the time Flume opened the UBS account, he did not disclose the

account to Leonard Purcell ("Purcell"), his longtime tax return preparer. *Gov. Ex. 47, Purcell Dep.*

*p. 24 lines 18-20.*

         a.    Purcell has had a tax preparation business for decades. Purcell has been preparing

            U.S. tax returns for individuals in Mexico from 1980 to the present except for

            when he worked for the IRS from 1990-1995 at the U.S. Embassy in Mexico.

            *Gov. Ex. 47, Purcell Dep. p. 10 line 11 to p. 11, line 25.* Purcell was a taxpayer

            specialist at the IRS from 1990-1995. *Gov. Ex. 47, Purcell Dep.p. 11, lines 16-17.*

            Leonard Purcell has never been sued for his tax preparation work. *Gov. Ex. 47,*

*Purcell Dep. p. 17 line 25 to p.18 line 1, and p. 66 lines 15-17.* Flume has not sued Leonard Purcell. *Gov. Ex. 43, Flume Dep. p. 59 lines 3-4.*

    b.   Purcell was aware of the FBAR reporting requirements since 2001. *Gov. Ex. 47, Purcell Dep. p. 44 lines 23-25.* In the 2007 and 2008 tax years, Purcell prepared Forms TD F 90-22.1 disclosing foreign accounts for other clients and himself. *Gov. Ex. 47, Purcell Dep. p. 44 lines 20-21 and p. 45 lines 1-2.*

    *c.*   Flume was a client of Purcell's tax preparation business from 2003 or 2004 to at least April 2011, when Purcell last prepared Flume's 2010 return. *Gov. Ex. 47, Purcell Dep. p. 18 lines 10-18 and p. 33 lines 13-23.*

19.    Purcell sent Flume letters in 2005, 2006, 2007 and 2008 requesting information regarding foreign bank accounts. *Gov. Ex. 47, Purcell Dep. p. 59 lines 2- 6.*

20.    Purcell reviewed Flume's 2007 federal income tax return after it was prepared by Adriana Luna, an employee in Purcell's tax business. *Gov. Ex. 47, Purcell Dep. p. 20 line 21 to p. 21, line 5 and Gov. Ex. 1.*

21.    At the time of preparing the 2007 income tax return, Flume did not disclose to Purcell that he had signature authority over a UBS account in Switzerland. *Gov. Ex. 47, Purcell Dep. p. 23 lines 3-13.*

22.    If Flume had disclosed to Purcell the UBS Switzerland account he would have listed Switzerland on Schedule B of Flume's 2007 return in the same fashion Mexico was listed. *Gov. Ex. 47, Purcell Dep. p. 24, line 21 to p. 25, line 1. (Gov. Ex. 1).*

23.    Purcell reviewed Flume's 2008 federal income tax return after it was prepared by Adriana Luna. *Gov. Ex. 47, Purcell Dep. p. 25 lines 2- 12, and Gov. Ex. 1.*

24.     In 2008 or 2009, Flume did not disclose to Purcell that he had signature authority over the UBS account in Switzerland.  *Gov. Ex. 47, Purcell Dep. p. 25 lines 13-18 and p. 27 lines 15-18.*

25.     If Flume had disclosed to Purcell the UBS Switzerland account he would have listed Switzerland on Schedule B of Flume's 2008 return.  *Gov. Ex. 47, Purcell Dep. p.25 lines 19-21.  (Govt. Ex. 2).*

26.     Flume did not give Purcell any documents regarding the UBS accounts.  *Gov. Ex. 43, Flume Dep. p. 172 lines 1- 8.*

27.     Flume never disclosed to Purcell that he had a personal credit card at UBS Bank in Switzerland.  *Gov. Ex. 47, Purcell Dep. p. 27 lines 19- 21.*

28.     Flume never disclosed to Adriana Luna ("Luna") his tax return preparer, that he had signature authority over an UBS account in Switzerland.  *Gov. Ex. 48, Ariana Luna Dep. p. 19 lines 3-5, p. 22 lines 17- 22, and p. 38 lines 7-9.*

> a.   Luna begin working in Leonard Purcell's tax preparation business in 1999. *Gov. Ex. 48, Luna Dep. p. 9 lines 5- 7.*  Luna is authorized as a tax return preparer by the IRS.  *Gov. Ex. 48, Luna Dep. p. 7 lines 19- 21.*  Luna is a Certified Acceptance Agent by the IRS.  *Gov. Ex. 48, Luna Dep. p. 7 lines 19- 21.*  Luna began preparing U.S. tax returns in 2001 or 2002. *Gov. Ex. 48, Luna Dep. p.97 lines 14- 15.* Adriana Luna has never been sued for her tax preparation work.  *Gov. Ex. 48, Luna Dep. p. 11 line 22 to p. 12 line 1.*  Flume never complained about Luna's tax work. *Gov. Ex. 48, Luna Dep.  p. 13 lines 22-24.*
>
> b.   Luna was aware of the Foreign Bank Reporting requirements including Form TDF 90-22.1 regarding foreign bank accounts in 2001 or 2002. *Gov. Ex. 48, Luna Dep. p. 13 line 25 to p. 14 line 16; and p. 20 line 24 to p. 21 line 10.*  Luna is familiar

with FBAR form TD F 90-22.1 and had filled out these forms since 2001. *Gov. Ex. 48, Luna Dep. p. 20 lines 3-15.*

    *c.*    Luna prepared Flume's U.S. tax returns starting in 2001 or 2002. *Gov. Ex. 48, Luna Dep. p. 10 lines 22- 25.*

29.     Luna sent Flume a letter informing him of his duty to report on his federal tax return if he had a financial interest in or signature authority over an account in a foreign county. *Gov. Ex. 56 and Gov. Ex. 48, Luna Dep. p. 25 line 19, pg. 26 line- 5 to pg. 27 line 18, and pg. 35 lines 12- 24.* This form letter had the 2007 exchange rate because Luna knew Flume had a bank account in Mexico and that Flume disclosed the Mexican account on his 2007 return. *Gov. Ex. 56 at pg. 3, Gov. Ex. 1, at lines 7a. and 7b on pg. DOJ 000768, and Gov. Ex. 48, Luna Dep. p. 25 line 19, pg. 26 line- 5 to pg. 27 line 18.*

30.     Luna checked the box on Schedule B of Flume's 2007 return indicating that Flume had foreign accounts in Mexico but not an account in Switzerland. *Gov. Ex. 1 at p. DOJ 000768 , Gov. Ex. 48, Luna Dep. p. 15 line 21 to p. 16 line 7.*

31.     Flume did not disclose to Luna that he had signature authority over a UBS account in Switzerland at the time of preparing his 2007 return. *Gov. Ex. 48, Luna Dep. p. 16 lines 8-11.* At the time of preparing the 2007, Luna was not aware the Flume or Wilshire Holdings had an account at UBS in Switzerland. *Gov. Ex. 48, Luna Dep. p. 16 lines 12-18.* Flume never provided to Luna any documents from the UBS account in Switzerland. *Gov. Ex. 48, Luna Dep. p. 16 lines 19-21, Gov. Ex. 43, Flume Dep. p. 172 lines 1- 8.*

32.     If Flume had disclosed to Luna the UBS Switzerland account she would have listed Switzerland on Schedule B of Flume's 2007 return. *Gov. Ex. 48, Luna Dep. p. 16 lines 22- 25.*

33.     Flume did not disclose to Luna his ownership of the foreign corporation Wilshire Holdings until late 2008.  *Gov. Ex. 48, Luna Dep. p. 17 lines 15- 20.*

34.     Luna checked the box on Schedule B of Flume's 2008 return indicating that Flume had a foreign account in Mexico but not Switzerland.  *Gov. Ex. 2 at p. 799, Gov. Ex. 48, Luna Dep. p. 18 lines 14 – 23.*

35.      Flume did not disclose to Luna that he had signature authority over a UBS account in Switzerland.  *Gov. Ex. 48, Luna Dep. p. 19 lines 3-5, and p. 38 lines 7-9.*  In 2008 or 2009, Luna was not aware that Flume had a personal credit card account at UBS in Switzerland.  *Gov. Ex. 48, Luna Dep. p. 19 lines 9 - 12.*

36.     If Flume had disclosed to Luna that he had signature authority over an account in Switzerland, she would have listed Switzerland on Schedule B of Flume's 2008 return.  *Gov. Ex. 48, Luna Dep. p. 19 lines 13- 17, and p. 38 lines 10-12.*

***Flume willfully failed to timely file his FBARs for 2007 and 2008 for the UBS Account***

37.     Purcell informed Flume of his FBAR filing requirements in 2003 or 2004 due to his ownership of a Mexican company. *Gov. Ex. 47, Purcell Dep. p. 58 lines 14-17.*

38.      Luna made Flume aware of his Foreign Bank Reporting Requirements every year she did his returns including 2007 and 2008.  *Gov. Ex. 56, Gov. Ex. 48, Luna Dep. p. 28 line 28 to pg. 29 line 4.*

39.     Flume admitted that he had a FBAR filing requirement for the UBS account in 2007. *Gov. Ex. 43, Flume Dep. p. 71 lines 11-17.*

40.     Yet, Flume failed to timely file Forms TD F90-221 "FBAR" for 2007 and 2008 regarding the UBS account.  *Gov. Ex. No. 5 at pp. DOJ 000236-239, Gov. Ex. 6 at pp. DOJ 000227-228, Gov. Ex. 41, RFA, Nos. 45 and 46.* Flume signed his Forms TD F90-221 "FBAR" for 2007 and 2008 regarding the UBS account on June 20, 2010.  *Id.*

11

41.     Flume stated that upon reviewing schedule B of his return and the box for foreign accounts, which specifically references TD-F 90-22.1, he was not going to bother to look for the instructions or for the form TD-F-22.1.   *Gov. Ex. 43, Flume Dep. pp. 70-71 lines 21-10.*

42.     Flume knew how to search on-line to learn about FBAR filing requirements. *Gov. Ex. 43, Flume Dep. p. 50 lines 12-21.*

43.     Even though Purcell was familiar with the Form TD F 90.22.1, Flume never asked Purcell to prepare any Forms TD F 90-22.1 for his foreign accounts. *Gov. Ex. 47, Purcell Dep. p. 31, lines 1- 3 and lines 12-13.  (Gov. Ex. 5).*

44.     Luna never filled out or reviewed any Form TD F 90.22.1 for Flume.  *Gov. Ex. 48, Luna Dep. p. 20 line 21 to p. 21 line 1.*

45.     On June 28, 2010, Flume filed delinquent FBARs for both 2007 and 2008 disclosing his foreign accounts at Monex in Mexico and the UBS account in Switzerland.  *Gov. Ex. 41, RFA, Nos. 64, 65 and Gov. Exs. 5 p. DOJ 000236, and Gov. Ex. 6 at p. DOJ 000227.*

46.     However, Flume's late filed FBARs for both 2007 and 2008 were incorrect and failed to disclose the proper maximum balances in the UBS account.  Flume's late filed FBAR for 2007 disclosed a maximum value in the UBS account of $625,000 during the 2007 calendar year.  *Gov. Ex. 41, RFA, No. 68, and Gov. Exs. 5 p. DOJ 000236, and Gov. Ex. 6 at p. DOJ 000227.*

47.     However, at the end of the 2007 year, the UBS account had a value of $800,419. *Gov. Ex. 25.*  During 2007 year, Flume's UBS account had a maximum value of $857,051.85 on October 31, 2007. *Gov. Ex. 27 at p. DOJ 000244.*

48.     Flume's late filed FBAR for 2008 disclosed a maximum value in the UBS account of $182,500 during the 2008 calendar year. *Gov. Ex. 5 at p. DOJ 000236, and Gov. Ex. 6 at p. DOJ 000227.*  However, Flume's UBS account had a maximum value of $755,345.56 in January of 2008. *Gov. Ex. 27 at p. DOJ 000246.*

12

49.     Flume never asked Purcell to even review the Forms TD F 90-22.1 that Flume prepared for the 2007 and 2008 tax years.  *Gov. Ex. 47, Purcell Dep. p. 31 lines 23- 25.  (Gov. Ex. 5).*

**Flume even failed to timely file his FBARs for his bank account in Mexico**

50.     During 2006, 2007 and 2008 Flume maintained a personal bank account in Mexico, at Banco Monex SA.  *Gov. Ex. 41, RFA, Nos. 36 and 37; Gov. Ex. 1, at p. DOJ 000768, Gov. Ex. 2 p. at DOJ 000799, and Gov. 58 at p. DOJ 000754.*   In March of 2008, Flume instructed and directed monthly payments of $35,000 from the UBS account to his Banco Monex SA account. *Gov. Ex. 31, at pp. DOJ 001100 and DOJ 001109.*

51.     In 2008, there were transfers from UBS to Flume as follows:

| Date | Amount | Location |
|------|--------|----------|
| 3/12/2008 | $35,000 | *Gov. Ex. 59 at DOJ 000603* |
| 7/2/2008 | $35,000 | *Gov. Ex. 59 at DOJ 000606* |
| 8/5/2008 | $35,000 | *Gov. Ex. 59 at DOJ 000606* |
| 9/4/2008 | $35,000 | *Gov. Ex. 59 at DOJ 000607* |
| 1/3/2008 | $35,000 | *Gov. Ex. 59 at DOJ 000607* |
| 11/10/2008 | $35,000 | *Gov. Ex. 59 at DOJ 000608* |

52.     Flume's foreign bank account in Mexico at Banco Monex had the following account balances:

| Year | Amount | Location |
|------|--------|----------|
| 2006 | $66,454 | *Gov. Ex. 5 at DOJ 000237* |
| 2007 | $39,950 | *Gov. Ex. 5 at DOJ 000237* |

53.     Despite checking the box on this 2006, 2007, 2008 federal tax returns indicating a foreign account in Mexico and having account balances exceeding $10,000, Flume failed to timely file Forms TD F90-221 "FBAR" for 2006, 2007 and 2008 regarding the Banco Monex account located in Mexico.  *Gov. Ex. No. 5 at pp. DOJ 000236-239, Gov. Ex. 6 at pp. DOJ 000227-228.*

*Flume has a history of failing to properly disclose his interest in Foreign entities*

54.     On January 30, 2017, The Tax Court determined that the IRS correctly assessed penalties against Flume for failing to file Forms 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations, during the 2001-2009 tax years reporting his ownership of the foreign corporation Wilshire Holdings, with the same UBS account at issue in this case. *Edward Flume v. Commissioner of Internal Revenue Service, T.C. Memo. 2017-21 attached as Gov. 42 at Pgs. 14-15.*

55.     The Tax Court determined Flume did not have reasonable cause for failing to file his Form 5471 reporting his interest in a foreign corporation because he failed to tell his return preparer Adriana Luna that he owned an interest in Wilshire Holdings, a Belize corporation. *Gov. Ex. 42 at pg. 16-17.*

### IRS Assessments

56.     On June 30, 2008, the UBS Account had a balance of $713,071.01.

57.     Flume's transfer of all the assets out of the UBS Account caused the UBS account to have a zero balance on June 30, 2009.   *Gov. Ex. 41, RFA, Nos. 75 and 76.*

58.     On April 15, 2014, a delegate of the Treasury Secretary assessed penalties against Flume pursuant to 31 U.S.C. § 5321(a)(5) for his willful failure to timely file FBARs reporting his financial interest in the UBS account for 2007 and 2008 as follows:

> Tax Year 2007        $356,509
> Tax Year 2008        $100,000
> *See Gov. Ex. 49.*

59.     Despite the notice and demand for payment, Flume has failed to pay the 2007 and 2008 FBAR penalties assessed against him.

60.     As of November 13, 2015, Flume owes the United States $507,025.16 in penalties assessed under 31 U.S.C. § 5321 for the 2007 and 2008 years.   *Gov. Ex. 61.*

61.     On April 5, 2016, the United States pursuant to 31 U.S.C. § 5321(b)(2), filed this suit to reduce to judgment the FBAR assessments made against Flume.  *(ECF No. 1)*

## V.    STANDARD FOR GRANTING SUMMARY JUDGMENT.

As this Court held in *Rodriguez v. Quarterman*, 2008 WL 717735 at *2 (S.D. Tex. March 17, 2008):

> A party is entitled to summary judgment if the pleadings and evidence show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the absence of any factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All reasonable inferences are to be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*citing United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Once met by the moving party, the burden shifts to the non-moving party, who must come forward with specific facts showing a genuine issue for trial. *Id.* at 586. If the evidence is merely colorable or not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## VI.   BURDEN OF PROOF.

The burden of proof in this case is on the United States to show by a preponderance of the evidence that Flume acted willfully.  *United States v. Williams,* 2010 WL 3473311 (E.D. Va. Sept. 1, 2010)[2]; *United States v. McBride*, 908 F.Supp.2d 1186 (D. Utah (2012); *United States v. Bohanec,* --- F.Supp.3d --- 2016 WL 7167860 (C.D. Cal. 2016); and *Bedrosian v. United States,* 2017 WL 3887520 at *1 (E.D. Pa. Sept. 5, 2017).

---

[2] As discussed below, on appeal *Williams* was reversed when the Fourth Circuit reversed the district court and found Williams acted willfully.  The Fourth Circuit's opinion did not change the district court's ruling that the preponderance of the evidence was the correct standard of proof.

## VII.   ARGUMENT.

### A.   *Flume had a statutory requirement to report the UBS Account and failed to do so.*

During 2007 and 2008, Flume was required to report the UBS Account because he had a financial interest in, and signatory authority over, a foreign account that had account balances exceeding $10,000.  However, Flume failed to timely report his report his interest in, and signature authority over the UBS Account. Pursuant to 31 U.S.C. § 5314, United States citizens are required to report certain transactions and relationships with foreign financial agencies. Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" to the IRS for each year in which such relationship exists. 31 C.F.R. § 1010.350(a). To fulfill the reporting requirement, a person must file a Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." *See id.*  An FBAR is due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year."  31 C.F.R. § 1010.306(c).

In the present case, during 2007 and 2008 Flume was a U.S. Citizen residing in Mexico. On October 18, 2005, Flume opened an account at UBS AG in Switzerland in the name of Wilshire Holdings, Inc. ("UBS Account").   Wilshire Holdings Inc. ("Wilshire") is a Belize Corporation incorporated by Flume in 2001. Upon opening the UBS Account, Flume represented that he and his wife, Martha Flume, owned all of the stock of Wilshire.  During 2007 and 2008, Flume was the sole director and president of Wilshire.   Flume and his wife were the only people with signature authority for the UBS account.  During 2007 and 2008 Flume had signature authority over the UBS Account.  Flume was even the beneficial owner of the UBS account.

During 2007 and 2008, Flume directed and controlled the investments in the UBS account. Flume had a personal credit card account with UBS for him and his wife.  Flume directed disbursements from the UBS account to his personal bank and debit card accounts.  Flume directed the transfer of funds from the UBS account to a French Bank account.

In three separate transactions during 2006, some $710,000 was deposited into the UBS Account. During 2007, the average monthly balance of the UBS account was $899,342.02. During 2008, the average monthly balance of the UBS account was $718,811.24.   Thus, the UBS Account balance exceeded $10,000 in both 2007 and 2008.

Accordingly, Flume had a statutory requirement to file FBAR forms reporting the UBS Account for years 2007 and 2008 on or before June 30, 2008 and June 30, 2009, respectively. However, finally on June 28, 2010, Flume filed delinquent FBARs for both 2007 and 2008 disclosing his foreign accounts at Monex in Mexico and the UBS account in Switzerland.  Flume even failed to even disclose the UBS Account on his 2007 and 2008 federal income tax returns. Flume had a reporting requirement but failed to timely file the FBARs reporting the UBS Account.

### B. *Flume Willfully Failed to Timely File Report his UBS Account*

There is no dispute that Flume was subject to the requirements of Section 5314 in 2007 and 2008 because he was a United States citizen who owned or had signature authority over a foreign account at UBS in Switzerland that had a balance of over $10,000 during the year.  *See* 31 U.S.C. § 5314.  It is undisputed that Flume knew about the need to report foreign bank accounts since he did list his Mexican bank account on his 2007 and 2008 income tax returns. He also filed late FBARs for 2007 and 2008 before the United States filed this suit.

### 1.   *Flume Knowingly Violated the FBAR Filing Requirements*

All citizens are charged with knowledge of the law as well as knowledge of the contents of documents that they sign.  *McBride*, 908 F.Supp.2d at 1205-1206 (internal quotations omitted).  Similarly, all taxpayers are charged with knowledge of the contents of their tax returns.  *Id.*  Tax returns contain a statement called the "jurat," located above the signature line, which states that the person signing the return certifies under penalties of perjury that he has examined the return and the contents are correct to the best of his knowledge.  A taxpayer's signature on a tax return sufficiently shows that he has knowledge of the instructions contained in the tax return.  *McBride*, 908 F.Supp.2d at 1206.  This is true regardless of whether an accountant or other professional prepared the return.  *McBride*, 908 F.Supp.2d at 1206-1207; *United States v. Williams*, 489 Fed. Appx. at 659; *see also Novitsky v. Am. Consulting Engr's, LLC*, 196 F.3d 699, 702 (7th Cir. 1999) (explaining that arguments blaming accountants for inaccurate tax returns are not effective, because "[p]eople are free to sign legal documents without reading them, but the documents are binding whether read or not").

The failure to truthfully answer whether one has foreign accounts and the related failure to investigate whether a Form 90-22.1 was required was sufficiently willful for the Sixth Circuit to affirm a criminal conviction in *United States v. Sturman,* 951 F.2d 1466 (6th Cir. 1991).  *See also United States v. Olbres,* 61 F.3d 967, 971 (1st Cir. 1995).  To hold otherwise would encourage taxpayers to sign tax returns without reading them in the hope of avoiding any negative consequences from inaccurate reporting.  *Novitsky v. Am. Consulting Engr's, LLC*, 196 F.3d at 702.  It would also allow taxpayers to fabricate stories that they did not read or understand the documents that they signed and such stories would be almost impossible to refute. *Id.*  As the court explained in *McBride*, a taxpayer cannot escape liability by simply claiming he

Case 5:16-cv-00073   Document 51   Filed on 10/27/17 in TXSD   Page 19 of 27


did not read what he was signing and therefore his violation of the law was not willful.  *United States v. McBride*, 908 F.Supp.2d at 1207.  The First Circuit Court of Appeals succinctly described this issue when stating that "innocence cannot outdistance ignorance."  *Katz v. United States*, 321 F.2d 7, 10 (1st Cir. 1963) (stating that a return is not less inaccurate because the taxpayer chose to be uninformed as to the extent that the return is inaccurate).

Flume knowingly violated the reporting requirements when he failed to timely report his UBS account on the FBARS.  He cannot seriously claim he was unaware he was required to file an FBAR.  Flume knew he had a "check the box" requirement to report his interest in and/or signature authority over a foreign bank account on his federal income tax returns.  On his federal tax returns for both 2007 and 2008, he "checked the box" on line 7a of Schedule B indicating a foreign account and then only listed his foreign account in Mexico.  Line 7a. of Schedule B specifically states as follows:

> At any time during 2007, did you an interest in or signature authority over a financial account in a foreign country, such as a bank account securities account, or other financial account?  See Instructions for exceptions and filing requirements for Form TD F 90-22.1.

Flume opened the UBS account. Flume was the beneficial owner and had signature authority over the UBS account in Switzerland in 2007 and 2008.  Yet, he failed to even list the Switzerland on his 2007 and 2008 returns.  Flume also admitted that he was not going to bother to look for the instructions or for the form TD-F-22.1.  He cannot escape a finding that he is liable for the willful penalties simply because he did not want to take the trouble to look at his tax return's instructions regarding reporting foreign bank accounts and filing FBARs.

If Flume were permitted to do so, the FBAR penalty, and all tax penalties, would be rendered meaningless.  Every taxpayer would claim that he did not know of the need to file an FBAR even if he did report a foreign account because it was a hassle to actually read the tax

return's instructions.  Flume's situation is even worse since he had paid tax preparers who knew of the FBAR requirements but he consciously decided to hide his Swiss account from them.

Additionally, Flume instructed UBS from the time he opened his account to not mail any information about his account to him.  Instead of receiving mail from UBS, Flume met in person with his Swiss banker annually to review his accounts' performance.  Flume discussed the IRS issues and the "check the box requirement" to report for foreign accounts with his UBS banker. Flume signed a waiver of right to invest in or hold United States securities for the UBS account to further avoid reporting the account to the IRS.  Flume willfully violated the reporting requirements of section 5314 when he failed to timely report his UBS account on his 2007 and 2008 FBARS.

Flume simply failed to list his much larger account with UBS in Switzerland and file the FBARS for that account.  In *United States v. Williams,* 489 Fed.Appx. 655 (4th Cir. 2012), the Fourth Circuit reversed a district court's decision in favor of Mr. Williams and ruled that he acted willfully as a matter of law.

The sole issue on appeal was whether Mr. Williams had acted willfully.  The Fourth Circuit found that he had acted willfully and stated:

> Here, the evidence as a whole leaves us with a definite and firm conviction that the district court clearly erred in finding that Williams did not willfully violate § 5314. Williams signed his 2000 federal tax return, thereby declaring under penalty of perjury that he had "examined this return and accompanying schedules and statements" and that, to the best of his knowledge, the return was "true, accurate, and complete." "A taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents." *Greer v. Commissioner of Internal Revenue*, 595 F.3d 338, 347 n. 4 (6th Cir.2010); *United States v. Doherty*, 233 F.3d 1275, 1282 n. 10 (11th Cir.2000) (same). Williams's signature is prima facie evidence that he knew the contents of the return, *United States v. Mohney*, 949 F.2d 1397, 1407 (6th Cir.1991), and at a minimum line 7a's directions to "[s]ee instructions for exceptions and filing requirements for Form TD F 90–22.1" put Williams on inquiry notice of the FBAR requirement.

20

Nothing in the record indicates that Williams ever consulted Form TD F 90–22.1 or its instructions. In fact, Williams testified that he did not read line 7a and "never paid any attention to any of the written words" on his federal tax return. J.A. 299. Thus, Williams made a "conscious effort to avoid learning about reporting requirements," *Sturman*, 951 F.2d at 1476, and his false answers on both the tax organizer and his federal tax return evidence conduct that was "meant to conceal or mislead sources of income or other financial information," *id*. ("It is reasonable to assume that a person who has foreign bank accounts would read the information specified by the government in tax forms. Evidence of acts to conceal income and financial information, combined with the defendant's failure to pursue knowledge of further reporting requirements as suggested on Schedule B, provide a sufficient basis to establish willfulness on the part of the defendant."). This conduct constitutes willful blindness to the FBAR requirement. *Poole*, 640 F.3d at 122 ("[I]ntentional ignorance and actual knowledge are equally culpable under the law.")

*Id.* at 659.

Flume, unlike Mr. Williams cannot even argue that he had ignorance about whether foreign accounts needed to be listed.  Unlike Mr. Williams, he did list an account.  He simply choose to report the much smaller Mexican account while keeping hidden his Swiss account.

Flume was subject to the reporting requirements of section 5314 during 2007 and 2008 with respect to his UBS account.  He was required to timely file FBARS containing information about the UBS account and his Mexican account for both 2007 and 2008.   However, Flume filed delinquent FBARs for both 2007 and 2008 finally disclosing his foreign accounts at Monex in Mexico and the UBS account in Switzerland.  Flume's failure to timely file FBARS for the UBS account was willful.

### 2.  *Flume recklessly disregarded the FBAR filing requirements.*

As discussed above, in civil cases reckless disregard for the legal consequences of his acts is sufficient to show that a person willfully violated a statutory duty.  A person acts with reckless disregard when violating a statute if he knows of an unjustifiably high risk of harm or the risk is so obvious that he should have known and he commits a violation anyway.  *Safeco Ins.*

*Co. of America v. Burr*, 551 U.S. at 68-69; *United States v. McBride*, 908 F.Supp.2d at 1205 (conduct qualifies as willful when evidencing reckless disregard of a known or obvious risk). Reckless disregard can also be inferred when a person is aware of a high probability that he has a tax liability but purposefully avoids learning facts that would confirm the liability. *United States v. Williams*, 489 Fed. Appx. 655, 658 (4th Cir. 2012); *United States v. McBride*, 908 F.Supp.2d at 1205 (stating that a person acts willfully when he consciously avoids learning of reporting requirements).

On a Schedule B of their return, taxpayers must declare whether they have an interest in a foreign bank account or signature authority over such an account.  The Schedule B line entry then explicitly directs taxpayers to review the instructions and exceptions for filing Form TD F 90-22.1, also known as an FBAR.[3]  *Id.*  A taxpayer who has a foreign bank account can be reasonably expected to read the information included in his tax return, including the reference to the FBAR on Schedule B.  *United States v. Sturman*, 951 F.2d 1466, 1477 (6th Cir. 1991) (finding that the defendant could have learned of the requirement to file an FBAR quite easily). The reference to the instructions for the FBAR puts a taxpayer on inquiry notice of the FBAR filing requirement.  *United States v. Williams*, 489 Fed. Appx. at 659.  Failure to read Schedule B qualifies as a conscious effort to avoid learning of the FBAR requirements.  *Id.*

At a minimum, Flume recklessly disregarded the reporting requirements of Section 5314. Flume is charged with knowledge of his tax return, including the directions on Schedule B for a taxpayer who has foreign bank accounts to determine whether they are required to file an FBAR. Flume therefore, was put on notice of the FBAR requirement long before he checked the box indicating a foreign account in Mexico but failing to disclose the large account in Switzerland.

---

[3] See infra block quote for Line 7a of Schedule B.

Flume's conscious decision to avoid reading Schedule B's instructions clearly means he knew he was not going to like what those instructions required. In fact, Flume admitted that he was not going to bother to look for the instructions or for the form TD-F-22.1.

Flume should have known that there was a significant risk that he was violating the law for not timely reporting because he took active steps to conceal the account. Both Purcell and Luna, Flume's long time tax return preparers, were aware of the FBAR requirements and specifically FormTD-F-22.1 since at least 2002. Purcell had even filed Forms TD F 90-22.1 for himself and other clients for 2007 and 2008. Luna and Purcell prepared and reviewed Flume's 2007 and 2008 federal tax returns. Yet, in 2007, 2008 or 2009, Flume did not disclose to his tax return preparers that he had signature authority over the UBS account in Switzerland. Flume did not give his tax return preparer any documents regarding the UBS account. Flume never disclosed to his tax return preparer that he had a personal credit card at UBS Bank in Switzerland. Flume waived his right to have the funds in the UBS account not invested in U.S. securities to avoid IRS withholding and reporting. To further conceal the UBS account, Flume placed the account in the name of a foreign entity Wilshire Holdings but at all times he was the beneficial owner of the UBS account. In 2008, shortly after learning of the IRS investigation of UBS, Flume closed the UBS account.

Flume also took on high risk regarding this UBS account and its non-reporting due to his significant activity with the account. Flume was actively involved in the UBS Account. Flume opened, was beneficial owner of, and had signature authority over, the UBS account. Flume directed and controlled the investments in the UBS Account. Flume actively traded in the investments in UBS Account. Flume had a personal credit card with the UBS Account. Flume directed disbursements from the UBS account to his personal account in Mexico. Flume met

with and entertained his UBS banker Florian Fischer at his home.  Flume was aware of and concerned about the IRS investigation of UBS.  Yet, he failed to timely file the FBARs reporting the UBS account in 2007 and 2008.

Further evidence of Flume's reckless disregard is the failure to properly report the maximum account balances in the UBS Account. The FBAR FormTD-F-22.1 requires the individual to report the "maximum value of the account during calendar year reported."[4]  Finally, on June 28, 2010, Flume filed delinquent FBARs for both 2007 and 2008 disclosing his foreign accounts at Monex in Mexico and the UBS account in Switzerland.  However, Flume's late filed FBARs for both 2007 and 2008 were incorrect and failed to disclose the proper maximum balances in the UBS account.  Flume's late filed FBAR for 2007 disclosed a maximum value in the UBS account of $625,000 during the 2007 calendar year.  During 2007 year, Flume's UBS account had a maximum value of $857,051.85 on October 31, 2007.  Flume's FBAR for 2008 disclosed a maximum value in the UBS account of $182,500 during the 2008 calendar year. However, Flume's UBS account had a maximum value of $755,345.56 in January of 2008.  The under reporting is further evidence of Flume attempting to conceal the true value and significant amounts in the UBS Account.

Based on the foregoing, Flume willfully failed to timely file FBARs for 2007 and 2008 reporting the UBS Account due to his reckless disregard for the reporting statutes.

**C.     *The IRS properly assessed the FBAR penalty amounts within the statutory limits.***

The amounts of the IRS assessments for the 2007 and 2008 FBAR penalties were made according to the statute.  31 U.S.C. § 5321(a)(5) provides for the imposition of civil penalties for a willful failure to comply with the reporting requirements of Section 5314 – *i.e,* when the person

---

[4] See line 15 on Gov. 5.

maintaining a foreign account fails to timely file an FBAR reporting that account despite having an obligation to do so.  Pursuant to 31 U.S.C. § 5321(a)(5)(C)(i), for willfully failing to report the existence of an account, the maximum amount of the penalty that may be assessed is 50% of the balance of the account at the time of the violation or $100,000, whichever is greater.   During 2007 year, the UBS account had a maximum value of $857,051.85.  On June 30, 2008, when the FBAR form for 2007 was due, the UBS account had an account balance of $713,017.01.   Fifty percent of the $713,017.01 balance in the UBS account rounded to the next nearest dollar is $356,509.  The IRS assessed a willful FBAR penalty against Flume for the 2007 year in the amount $356,509.  During 2008, the average monthly balance of the UBS account was $718,811.24.  However, on June 30, 2009, when the 2008 FBAR was due the UBS account had a zero balance because Flume transferred all the assets out of the account. Thus, since 50% of zero is zero, the IRS assessed a willful FBAR penalty against Flume for the 2008 year in the amount $100,000.  Accordingly, the IRS assessments for the 2007 and 2008 years were made within the statutory limits.

**D.**  ***The IRS assessments are timely and the statute of limitations has not expired.***

The IRS assessments of the FBAR penalties for the 2007 and 2008 years against Flume were timely.  Pursuant to 31 U.S.C. § 5321(b)(1), the statute of limitations on the assessment of an FBAR penalty is six years from the date of the violation.  The FBAR Forms TD F 90-22.1 for the 2007 and 2008 years were due on June 30, 2008, and June 30, 2009, respectively.  Thus, the statute of limitations date for assessing the FBAR penalties for 2007 and 2008 were June 30, 2014, and June 30, 2015, respectively.  On April 15, 2014, the IRS assessed penalties against Flume pursuant to 31 U.S.C. § 5321(a)(5)  for his willful failure to timely file FBARs reporting

his financial interest in the UBS account for 2007 and 2008 in the amounts of $356,509 and $100,000 respectively.  Accordingly, the IRS assessments were timely.

Likewise, the statute of limitations has not expired because this suit is timely. Pursuant to 31 U.S.C. § 5321(b)(2), a suit to reduce to judgment an FBAR assessment must be commenced within 2 years from the date of assessment.  The IRS assessed the FBAR penalties on April 15, 2014.  Thus, the United States had until April 15, 2016, to file a suit to reduce the assessments to judgment.  On April 5, 2016, the United States filed this  suit to reduce to judgment the 2007 and 2008 FBAR assessments made against Flume.  Accordingly, the statute of limitations has not expired.

## VIII. CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment should be granted.

ABE MARTINEZ
United States Attorney

/s/ Herbert W. Linder
HERBERT W. LINDER
Ohio Bar No. 0065446
JON E. FISHER
State Bar No. 550177-MA
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas  75201
(214) 880-9754
(214) 880-9774 (facsimile)
Herbert.W.Linder@usdoj.gov
Jon.Fisher@usdoj.gov

ATTORNEYS FOR UNITED STATES

**CERTIFICATE OF SERVICE**

I certify that on October 27, 2017, I electronically filed the foregoing document with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following:

David Rodriguez
921 Proton Road
San Antonio, Texas 78258
*Attorney for Edward Flume*

R. Spencer Shytles
GRAHAM, BRIGHT & SMITH
1401 Burnham Dr.
Plano, Texas 75093
*Attorney for BBVA Compass Bank*

/s/ Herbert W. Linder
HERBERT W. LINDER